# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDUS SHAWQI IBRAHEEM : | |
| AL-KAWAZ, *et al.*, : | |
| : | |
| Plaintiffs, : | Civil Action No.:   24-1792 (RC) |
| : | |
| v. : | Re Document Nos.:   7, 10 |
| : | |
| UNITED STATES DEPARTMENT : | |
| OF STATE, *et al.*, : | |
| : | |
| Defendants. : | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Sundus Shawqi Ibraheem Al-Kawaz and Ahmed Basim Altai ("Plaintiffs") brought this action seeking to compel the United States Department of State and Secretary of State Marco Rubio[1] ("Defendants") to adjudicate Ms. Al-Kawaz's visa application. Defendants moved to dismiss the complaint. For the reasons discussed below, the Court grants the motion to dismiss.

### II. BACKGROUND

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, establishes that certain noncitizens, including spouses of U.S. citizens, may apply for visas to enter the United States. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); *see also* 8 C.F.R. § 204.1(a)(1), (b); *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *1 (D.D.C. Jan. 30, 2024). Visa applicants "make" or "execute" their applications by bringing the required

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Rubio was automatically substituted for his predecessor.

paperwork to an in-person interview with a consular officer. 9 Foreign Affairs Manual ("FAM") § 504.1-3(a), (g).[2] Following the interview, federal regulations generally require the consular officer to issue or refuse the visa.[3] 22 C.F.R. § 42.81(a); *see also Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (per curiam).

INA § 221(g) requires an officer to deny a visa application if the officer "knows or has reason to believe" the noncitizen is "ineligible to receive a visa" under "any provision of law" based on "statements in the application, or in the papers submitted therewith." 22 C.F.R. § 41.121(a); 8 U.S.C. § 1201(g). In some cases, an officer will reject a visa application under INA § 221(g) but then immediately place the application in administrative processing, which allows the applicant to submit additional information. *E.g.*, *Janay v. Blinken*, 743 F. Supp. 3d 96, 102–03 (D.D.C. 2024). That happened here.

Ms. Al-Kawaz is an Iranian citizen married to Mr. Altai, a U.S. citizen. Compl. for Injunctive & Declaratory Relief & Pet. for Writ of Mandamus ("Compl.") ¶¶ 1, 10, 11, ECF No. 1; Pls.' Br. in Opp'n to Defs.' Mot. Dismiss at 2 ("Pls.' Opp'n"), ECF No. 8. She applied for a visa in September 2021 and had a consular interview in Ankara, Turkey, on November 8, 2022. Mot. Dismiss & Mem. in Supp. Thereof, ("Mot. Dismiss") at 2, ECF No. 7. The consular official refused Ms. Al-Kawaz's application under INA § 221(g) and then placed it in administrative processing. *Id.* at 2.

On June 21, 2024, Plaintiffs filed this lawsuit to "compel action" on Ms. Al-Kawaz's visa application. Compl. ¶ 1. Their six-count complaint alleges (1) that the government's delay

---

[2] The Foreign Affairs Manual articulates the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5; *see* 18 FAM § 201.1-1(B).

[3] Consular officers may also "discontinue granting the visa" under certain circumstances inapplicable here. *See* 8 U.S.C. § 1253(d); 22 C.F.R. § 42.81(a).

2

violates the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; (2) that they are entitled to relief under the Mandamus Act, 28 U.S.C. § 1361; (3) that the government violated the Immigration and Nationality Act, 8 U.S.C. § 1201(g); (4) that they are entitled to a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201; (5) that the delay violates the Fifth Amendment's Due Process and Equal Protection clauses; and (6) that they are entitled to attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2). Compl. ¶¶ 33–46.

The government has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). *See generally* Mot. Dismiss. Plaintiffs filed an opposition and the government filed a reply. Pls.' Opp'n; Reply in Further Supp. of Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 9. The motion to dismiss is thus ripe for review.

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

#### B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV.  ANALYSIS

Defendants make two arguments in their motion to dismiss. One, that Plaintiffs' claims fail because they have not identified a clear, non-discretionary duty that a government official is required to fulfill. Mot. Dismiss at 4–8. Two, that judicial review of their claims is barred by the consular non-reviewability doctrine. *Id.* at 8–11. In making these arguments, Defendants rely heavily on the D.C. Circuit's recent unpublished decision in *Karimova v. Abate*, 2024 WL 3517852.

Like Ms. Al-Kawaz, the *Karimova* plaintiff's visa application was refused by a consular official under INA § 221(g) and then placed in administrative processing. *Id.* at *2. Around one year later, Ms. Karimova filed a lawsuit claiming that the delay was unlawful under the APA and the Mandamus Act. *Id.* She asked the district court to "compel" the consular official to "finally adjudicate" her visa. *Id.* Ms. Karimova argued that the consular official was "required to either issue her a visa or refuse her application, without then also placing it in administrative processing." *Id.* at *3.

The panel disagreed. It held that refusal of a visa under INA § 221(g) constitutes a final decision, even if the government immediately after puts the application into administrative

4

processing. *Id.* at *1, *4; *see also* 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . , the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."); 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). To state a claim for unlawful agency delay under the APA, a plaintiff must show that the defendant failed to perform a "legally required, discrete act." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009). To obtain a writ of mandamus, a plaintiff must similarly establish that the government is violating "a crystal-clear legal duty." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Because the *Karimova* applicant had received a final decision on her visa application—denial pursuant to INA § 221(g)—there was no ongoing delay and no mandatory action for the court to compel. *See generally Karimova*, 2024 WL 3517852.

The facts in *Karimova* are materially indistinguishable from the facts here, so the D.C. Circuit's holding would seem to flatly foreclose Ms. Al-Kawaz's claims.[4] But courts in this district are split on whether unpublished circuit decisions like *Karimova* are binding. *Compare*, *e.g.*, *Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) (holding that *Karimova* is binding precedent), *and Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (same), *and Mojaver v. Garland*, No. 24-cv-0253, 2024 WL

---

[4] Plaintiffs characterize *Karimova* as "a situation where the visa application was definitively refused," as compared to Ms. Al-Kawaz's case, "where no final refusal has been issued." Pls.' Opp'n at 6. The consular official in *Karimova* took the exact same steps as the consular official did here: first she refused the applicant's visa under INA § 221(g); then she placed it in administrative processing. *Karimova*, 2024 WL 3517852 at *2.

5

4715419, at *2–3 (D.D.C. Nov. 7, 2024) (same), *and Amjad v. Schofer*, No. 24-cv-1773, 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (same); *with, e.g.*, *Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *1 (D.D.C. Aug. 2, 2024) (holding that *Karimova* is not binding precedent); *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) (same), *and Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025) (same), *and Mahmoodi v. Altman-Winans*, No. 24-cv-2010, 2025 WL 763754, at *6 (D.D.C. Mar. 11, 2025) (same); *and Akter v. Flook*, No. 24-cv-146, 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025) (same). The split stems from two circuit rules that facially conflict. D.C. Circuit Rule 32.1(b)(1)(B) provides that unpublished circuit decisions "may be cited as precedent." D.C. Circuit Rule 36(e)(2) states, however, that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." So what is a district court to do: treat *Karimova* as precedent, or not? The Court need not resolve that question here because, as discussed below, there are independent reasons to grant the motion to dismiss.

### A. Consular Nonreviewability Doctrine

The Court starts with Defendants' position that the doctrine of consular nonreviewability bars Plaintiffs' claims. *See* Mot. Dismiss at 8–11. As its name suggests, the consular nonreviewability doctrine generally "shields a consular official's decision to issue or withhold a visa from judicial review."[5] *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see also Saavedra Bruno* v. *Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999) ("[C]onsular visa determinations are not subject to judicial review."); *United States ex rel. Knauff v.*

---

[5] There are two exceptions to the doctrine, neither of which applies here. *See Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (describing the exceptions).

*Shaughnessy*, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien").  Before *Karimova*, courts in this district had often held that the doctrine does not apply when a consular officer initially refuses a visa application under INA § 221(g) and then places the application in administrative processing.  *See, e.g.*, *Hamdan v. Oudkirk*, No. 24-cv-1001, 2024 WL 4553983, at *4–5 (D.D.C. Oct. 23, 2024).  Those courts had reasoned that "the consular nonreviewability doctrine applies only to *final* decisions" and therefore "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *See Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (emphasis added) (collecting cases); *but see Yaghoubnezhad v. Stufft*, 734 F. Supp 3d 87, 11 (D.D.C. 2024) (holding that plaintiffs' visa delay claims were barred by consular nonreviewability doctrine).

*Karimova* casts doubt on that reasoning.  The Circuit held that once a consular official refuses a visa application under INA § 221(g), the visa has been finally refused, even if the application is then placed in administrative processing.  *Karimova*, 2024 WL 3517852, at *2.  The panel explained that a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate the applicant's case"—which may never happen.  *Id.*

The Court need not determine the extent to which *Karimova* requires it to apply the consular nonreviewability doctrine here.  Because the doctrine is "not jurisdictional," *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024), courts may "assume without deciding" that a plaintiff's "claims are reviewable[] notwithstanding consular nonreviewability."  *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018).  The Court takes that approach.

### B. Clear and Non-Discretionary Duty

Again invoking *Karimova*, Defendants argue that Plaintiffs have failed to state a claim because they have not identified a "clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application now that it has been refused under INA Section 221(g)." *See* Mot. Dismiss at 4–8. To articulate a claim of "unreasonable delay . . ., [Plaintiffs] must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Arabzada v. Donis*, 725 F. Supp 3d 1, 11 (D.D.C. 2024); *see also Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What Plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances Plaintiffs must establish that the government has a clear, non-discretionary duty."). In passing, Plaintiffs point to two sources of such a non-discretionary duty: 5 U.S.C. § 555(b) and 22 C.F.R. § 42.81(a). Pls.' Opp'n at 8. Section 555(b) of the APA is an "[a]ncillary" provision stating that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time[.]" 5 U.S.C. § 555(b). 22 C.F.R. § 42.81(a) provides that a consular official must, upon reviewing a visa application, generally "issue" or "refuse" the visa.

The Court is persuaded by *Karimova* that neither provision establishes a clear and non-discretionary duty in this context. Ms. Al-Kawaz's visa was refused by a consular official in 2022, so she has "received the 'refused' decision that the law [(*i.e.*, 22 C.F.R. § 42.81)] expressly authorizes as one of the allowed actions on a visa application." *Karimova*, 2024 WL 3517852, at *4; *see* 22 C.F.R. § 42.81; 8 U.S.C. § 1201(g). 22 C.F.R. § 42.81(a) does not establish any additional action for the government to take after an application is refused.

Nor does 5 U.S.C. § 555(b), which is a "non-specific directive to all agencies to 'proceed to conclude a matter' within a 'reasonable time' and with 'due regard' to the parties." *Karimova*, 2024 WL 3517852, at *3 (quoting 5 U.S.C. § 555(b)).  As the *Karimova* panel explained, that provision "does not plainly . . . place upon consular officers a 'crystal-clear legal duty' after they have adjudicated a visa application." *Id.* (citing *In re Ctr. for Biological Diversity*, 53 F.4th at 670).  "[A]t most" it "could have entitled [Ms. Al-Kawaz] to the official refusal decision she already received." *Id.* at *4.

So neither 22 U.S.C. § 42.81(a) nor 5 U.S.C. § 555(b) creates a "crystal-clear" obligation for Defendants to re-adjudicate Ms. Al-Kawaz's visa application.  Other courts have described disapprovingly the incongruities that arise from the government's power to refuse a visa application—shutting off judicial review—and then put that application in administrative processing for eventual reconsideration.  *E.g.*, *Datta v. Rubio*, No. 24-cv-2937, 2025 WL 752643, at *8 (D.D.C. Mar. 10, 2025) ("As Magistrate Judge Faruqui noted, *Karimova*'s holdings incentivize agencies charged with the adjudication of visa applications to simply 'refuse applications out of hand and then begin the true deliberation process thereafter,' leaving 'no possibility for judicial oversight of untimely decision making.'") (quoting *Haeri Mehneh*, 2024 WL 5116521, at *5); *Ibrahim*, 2024 WL 4103702, at *3 & n.2. (similar).  But that is not a problem the Court is empowered to solve.  *See Datta,* 2025 WL 752643, at *9 ("[T]he statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court.").  Plaintiffs have not identified a clear and non-discretionary duty, so their claims for relief under the APA (Count I) and the Mandamus Act (Count II) must be dismissed.

9

### C. Remaining Claims

Though the government's motion to dismiss does not specifically address Plaintiffs' allegations that the delay violates Mr. Altai's Fifth Amendment rights (Count V); that it violates the INA (Count III); or that they are entitled to relief under the Declaratory Judgment Act, *see generally* Mot. Dismiss, the Court will dismiss those claims *sua sponte*. *See Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (holding that a court may dismiss a claim *sua sponte* under Rule 12(b)(6) "whenever the plaintiff cannot possibly win relief") (internal quotation omitted). Plaintiffs cannot possibly win relief on any of those counts.

The Court starts with Plaintiffs' Fifth Amendment claim in Count V. In *Colindres v. Department of State*, the D.C. Circuit held that "[t]hough marriage is a fundamental right, it does not include the right to live in America with one's spouse." 71 F.4th 1018, 1020–23 (D.C. Cir. 2023). There is therefore no constitutional violation when the government denies a U.S. citizen's foreign spouse's visa application. *Id. Colindres* requires dismissal of Count V.

Plaintiffs' INA and Declaratory Judgment Act claims in Counts III and IV must also be dismissed because neither the statute provides a cause of action. By its terms, the INA does not "authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa." 6 U.S.C. § 236(f) ("Nothing in this section shall be construed to create or authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."); *see also Muñoz*, 602 U.S. at 908 ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa . . . ."). And it is well-settled that the Declaratory Judgment Act does not provide an independent cause of action. *E.g.*, *Ali v. Rumsfeld*, 649 F.3d

762, 778 (D.C. Cir. 2011) (discussing how the Declaratory Judgment Act does not "provide a cause of action").

Finally, because none of Plaintiffs' substantive claims state a claim for which relief can be granted, their derivative claim for attorneys' fees under the Equal Access to Justice Act in Count VI must also be dismissed. The Court will therefore dismiss the complaint under Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.[6] An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 26, 2025                                             RUDOLPH CONTRERAS
                                                                 United States District Judge

---

[6] Because the Court is dismissing this action, it also denies as moot Plaintiffs' "motion for release," ECF No. 10.